UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Seifert,
    Plaintiff,

v.                                                  Civil Action No. 2:09-CV-119

Corrections Corporation of America,
Andrew Pallito, Kevin Oddy,
    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 11 and 14)

Plaintiff Christopher Seifert, a Vermont inmate proceeding *pro se*, claims that the defendants wrongfully transferred him out of state and then failed to protect him from assaults by fellow inmates. Pending before the Court is the defendants' motion to dismiss (Doc. 11), in which they argue (1) that Seifert has failed to allege a viable failure to protect claim; (2) that the Eleventh Amendment bars Seifert's official capacity claims against state employees; (3) that the complaint fails to allege sufficient personal involvement by the defendants; (4) that qualified immunity applies; (5) that Corrections Corporation of America ("CCA") is not alleged to have adopted or enforced an unconstitutional policy; and (6) that the Court has no jurisdiction to hear a state law claim. The motion to dismiss is unopposed. Also pending before the Court is Seifert's motion to remand this case to state court so that it can be consolidated with two of his other pending cases. (Doc. 14.)

For the reasons set forth below, I recommend that the motion to remand be DENIED and the unopposed motion to dismiss be GRANTED.

**Factual Background**

For the limited purpose of ruling on the motion to dismiss, the facts alleged in the complaint will be accepted as true.

In December 2006, Seifert was transported from Vermont to a CCA facility in Beattyville, Kentucky. The complaint contends that placing an inmate "with just misdemeanor charges" in an out-of-state facility was "a violation of both Kentucky Law and the contract that [the Vermont Department of Corrections] has with CCA." (Doc. 4 at 4.) While in Kentucky, Seifert was allegedly assaulted by two other inmates. He was subsequently placed in segregation for one month, and ultimately returned to Vermont "as an emergency due to the misdemeanors being a violation of said [law and contract]." *Id.*

In October 2008, Seifert was sent to Kentucky a second time while incarcerated on misdemeanor charges. He was again assaulted, placed in segregation, and eventually "put on an emergency transport to" a CCA facility in Tennessee. *Id.* In both 2006 and 2008, prior to being sent out of state, Seifert allegedly "brought this to the DOC Staff's attention. I even contacted the Warden, Living Unit Supervisor, Unit Manager and Assistant Wardens informing them of this issue and they did absolutely nothing to correct it." *Id.* The Court presumes that the "issue" to which Seifert allegedly alerted DOC personnel was the legality of sending a misdemeanor offender to an out-of-state facility.

Seifert asserts that if had been allowed to remain in Vermont, he would not have been assaulted. For relief, he seeks monetary damages for "violation of constitutional rights for failure to protect and failure to train." *Id.* at 6.

The defendants in the case are CCA, Vermont Department of Corrections ("DOC") Commissioner Andrew Pallito, and DOC Casework Supervisor for the Out-of-State Unit Kevin Oddy. They have jointly moved to dismiss, asserting six grounds for dismissal as set forth above. Also before the Court is Seifert's "Motion for Removal and Consol[i]dation of Actions," in which he asks that this case be remanded to state court.

## Discussion

I.  **Motion for "Removal" and "Consolidation"**

The Court will first address Seifert's procedural motion, since the ruling on that motion will dictate the propriety of deciding the defendants' motion to dismiss.

Seifert asks the Court to "grant removal of this action for consolidation and joinder to the claims currently pending in the Washington Superior Court." (Doc. 14 at 1.) He informs the Court that he has two actions currently pending in state court, and asserts that both cases "are relevant and related to the same underlying actions or failures to act on the part of various defendants" in this case. *Id.* He submits his motion pursuant to Rule 18(a), which pertains to joinder of claims, and Rule 42, which allows cases to be consolidated. Fed. R. Civ. P. 18(a), 42.[1]

In essence, Seifert is asking the Court to transfer or remand this action to state court.[2] To the extent that he seeks a remand, Seifert has not cited any valid legal

---

[1] Although Seifert cites the Vermont Rules of Civil Procedure, the Court assumes that being in federal court, he intended to cite the Federal Rules.

[2] Notably, he has not asked the Court to dismiss the case without prejudice so that he may re-file in state court.

3

mechanism for the Court to use in issuing such an order. Moreover, the fact that Seifert's claims are brought primarily under 42 U.S.C. § 1983 means that his claims belong in federal court. *See Ferreira v. New York Daily News*, 2009 WL 890577, at *3-*5 (E.D.N.Y. March 31, 2009).

Seifert's motion cites cases in which the action was initiated in state court, removed to federal court by a defendant, and a motion to remand was under consideration. In those cases, the plaintiff's choice of forum was given significant weight. *E.g. Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007). Here, in contrast, Seifert filed a federal § 1983 suit in federal court. Even in a traditional removal/remand situation, this sort of complaint would not be subject to a remand. *See Baker v. Kingsley*, 387 F.3d 649, 656-57 (7th Cir. 2004) ("[I]t is an abuse of discretion for a district court to remand a federal claim that is properly before it."); *Green v. Ameritrade*, 279 F.3d 590, 596 (8th Cir. 2002) ("a district court has no discretion to remand a claim that states a federal question"); *Nelson v. City of Rochester, NY*, 492 F. Supp. 2d 282, 288 (W.D.N.Y. 2007).

With regard to the question of consolidation, the Court has no power to consolidate this case with cases pending in state courts. The consolidation provision in Rule 42 only applies to "actions before the court . . . ." Fed. R. Civ. P. 42(a) . Because Seifert's state court cases are not pending here, the Court "is without authority to consolidate these actions." *Dinardi v. Ethicon, Inc.,* 145 F.R.D. 294, 296 (N.D.N.Y. 1993). I therefore

recommend that Seifert's motion for removal and consolidation be DENIED.[3]

## II      Motion To Dismiss

### A.      Standards

The defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "When jurisdiction is challenged, the plaintiff 'bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.'" *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).

A Rule 12(b)(6) motion tests the legal sufficiency of Seifert's complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the Court must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the plaintiff. *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469

---

[3] The Second Circuit has held that because motions to remand are dispositive under 28 U.S.C. § 636(b)(1)(A), they are not "pretrial matters" and a Magistrate Judge must render a Report and Recommendation on such motions. *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264-66 (2d Cir. 2008).

(2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility." *Bell Atlantic Corp. Twombly*, 550 U.S. 544, 556-60 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). This standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. Eleventh Amendment

Defendants Pallito and Oddy move to dismiss all damages claims brought against them in their official capacities, citing their immunity from suit in federal court under the Eleventh Amendment. The Eleventh Amendment prohibits suits for damages brought in federal court against unconsenting states or state officials sued in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Congress has not abrogated Vermont's sovereign immunity from a § 1983 suit in

federal court, and the State of Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment. *See, e.g.*, 12 V.S.A. § 5601(g). Therefore, any federal constitutional claims for damages brought against Pallito and Oddy should be DISMISSED. The Court also notes that while the DOC is not listed in the "Parties" section of the complaint, it is listed as a defendant in the caption. To the extent that the DOC is a party, and given its status as a state agency, any claims brought against it are barred by the Eleventh Amendment as well. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

### C. Personal Involvement

Defendants Pallito and Oddy also move to dismiss the claims brought against them in their individual capacities, arguing that the complaint fails to allege sufficient personal involvement. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991)). Beyond naming Pallito and Oddy as parties, the complaint does not allege any specific wrongful acts by the defendants. Seifert claims that he was transferred to Kentucky unlawfully, but does not allege who was responsible for the transfer. He also claims that someone failed to protect him from his fellow inmates, but does not provide those persons' identities. Finally, he claims that he alerted prison personnel, either in Vermont or Kentucky, of his contentions, but again fails to identify anyone by name. What details he does provide, including allegations that he alerted a "Warden, Unit Supervisor, Unit Manager and Assistant Wardens," do not

7

include either Pallito or Oddy, who at the time in question were the DOC Commissioner and Out-of-State Unit Casework Supervisor, respectively. (Doc. 4 at 2, 5.)

In addition to his failure to protect claim, Seifert includes in his prayer for relief an allegation of "failure to train." Once again, he does not identify any of the defendants specifically in this allegation. Reading the complaint liberally, it is conceivable that Seifert is bringing a claim of supervisory liability. The Second Circuit has established that, for a supervisory defendant to be held liable under § 1983, the claim cannot rest on respondeat superior.

> '[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior.' *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citing *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989)). To establish the liability of a supervisory official under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations. *See Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995). By the same token, however, mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority).
>
> Supervisor liability under § 1983 "can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez*, 341 F.3d at 145; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *see also Ashcroft v. Iqbal*, 129 S.

8

Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Insofar as Seifert intends to bring a claim for supervisory liability, the complaint is plainly deficient. There is no allegation that any defendant was directly involved in wrongful acts, or that they were even aware of Seifert's claims.[4] Further, Seifert does not contend that the DOC had a policy or custom that sanctioned unconstitutional conduct, or that the defendants were grossly negligent. Finally, to the extent that Seifert is claiming that DOC officials failed to properly supervise or train CCA personnel, it has been held that CCA employees are not subordinates of state correctional officials. *See, e.g., Means v. Lambert*, 2008 WL 281551, at *5 (W.D. Okla. Jan. 31, 2008) (because state DOC and CCA were "related by contract rather than employment ... CCA personnel cannot be considered 'subordinates' of the [state DOC's] employees" as a matter of law). I therefore recommend that the Court GRANT the motion to dismiss submitted on behalf of

---

[4] In naming CCA as a defendant, Seifert puts the name of Warden Randy Stovall in parentheses. (Doc. 4 at 1). It is not clear whether Stovall was intended to be a defendant in the case, and Stovall was never served. In any event, a claim against Stovall would be dismissed for failure to state a claim, since there is no allegation of personal involvement by the Warden, and as discussed below, Seifert has failed to allege a claim for failure to protect. Also, to the extent that the complaint claims that the Warden was made aware of "the issue" (Doc. 4 at 5), simply filing a complaint with a prison executive does not establish supervisor liability under § 1983. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (holding that claim was properly dismissed where only allegation pertaining to supervisory defendants was that plaintiff had filed complaints); *Walker v. Pataro*, 2002 WL 664040, at *12 (S.D.N.Y. April 23, 2002) ("if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose respondeat superior liability.").

defendants Pallito and Oddy.[5]

### D. Failure To Protect

The defendants also argue that Seifert has not alleged a viable claim of failure to protect. It has long been held that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). That duty, however, applies only insofar as the conditions of confinement presented a substantial risk of serious harm, and the prison official was deliberately indifferent to the inmate's safety. *Id.* at 834. "For example, correctional staff would be on notice of a substantial risk of serious harm where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept separated." *Muhmmaud v. Murphy*, 2009 WL 404104, at *7 (D. Conn. Nov. 19, 2009) (citing *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir. 1985)).

Seifert makes no such allegations here. The complaint appears to allege that he was placed in a facility with felons, and was thus exposed to a heightened risk of attack. This sort of generalized claim does not satisfy the Eight Amendment "deliberate indifference" standard set forth in *Farmer*. 511 U.S. at 834. Indeed, the complaint does not allege that the defendants were aware of any particular risk of danger that, if ignored, might expose them to liability under § 1983. The failure to protect claim should, therefore, be DISMISSED.

---

[5] If Seifert is claiming that Pallito or Oddy either improperly administered or violated the terms of the contract with CCA, this Court has found that the contract between DOC and CCA does not permit third-party claims by inmates. *Bain v. Hofmann*, 2008 WL 149015, at *3 (D. Vt. Jan. 10, 2008).

### E. Corrections Corporation of America

Defendant CCA contends that it cannot be held liable because Seifert was not injured as a result of any official company policy. The Second Circuit has held that "[p]rivate employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that 'action pursuant to official . . . *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (emphasis in original) (quoting *Monell v. Dep't of Social Serv. of the City of New York,* 436 U.S. 658, 691 (1978)). CCA is correct that the complaint does not allege such a policy, and that there is therefore is no basis for § 1983 liability.

Furthermore, the facts alleged in the complaint suggest that CCA officials may have taken efforts to protect Seifert once it became apparent that he was in danger. Specifically, Seifert alleges that after each assault, he was placed in segregation and then transferred either to Vermont or to another CCA facility on an "emergency" basis. (Doc. 5 at 6.) These allegations run counter to an inference that a CCA policy somehow caused a constitutional tort. I therefore recommend that any claims of unconstitutional conduct brought against CCA be DISMISSED.

### F. State Law Claim

If the Court adopts this Report and Recommendation, the only remaining claim will be Seifert's contention that his transfer to Kentucky violated Kentucky state law. Because Pallito, Oddy and Seifert are all Vermont citizens, and the complaint seeks less than $75,000 in damages, there is no basis for diversity jurisdiction. 28 U.S.C. § 1332.

The Court therefore lacks original jurisdiction and should decline to take supplemental jurisdiction over any state law claims. 28 U.S.C. § 1367(c); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

## III. Leave to Amend

The final consideration for the Court is whether Seifert should be granted leave to amend. A court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading . . . gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). As discussed above, Seifert's sparse pleading does not connect any of the named defendants to the alleged wrongdoing. Nor does his failure to protect claim satisfy the elements of an Eighth Amendment violation. Because these deficiencies might be cured by more thorough and precise pleading, I recommend that the Court grant Seifert 30 days in which to file an amended complaint. Failure to file an amended complaint within this time period should result in dismissal of the case with prejudice, with the exception of any state law claims, which should be dismissed without prejudice.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Doc. 11) be GRANTED and the plaintiff's motion for removal and consolidation (Doc. 14) be DENIED. I further recommend that the Court allow the plaintiff 30 days in which to file an amended complaint, and warn that failure to file an amended complaint within this time period will likely result in dismissal of the case. Any dismissal should be

with prejudice, with the exception of any state law claims, which should be dismissed without prejudice.

Dated at Burlington, in the District of Vermont, this 7th day of January, 2010.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72(a), 72(c), 73; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).